ALICE BELLVILLE, RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.

Argued January 17, 1939—Decided March 21, 1939.

Before Justices TRENCHARD, PARKER and PERSKIE.

For the appellant, *McCarter & English* (*Augustus C. Studer, Jr.,* of counsel).

For the respondent, *Feder & Rinzler* (*Jack Rinzler,* of counsel).

The opinion of the court was delivered by

PARKER, J. The question in this case is as to the construction and legal effect of a "rider" attached to an industrial policy issued by the defendant corporation in connection, of course, with the policy itself.

The original policy was issued in October, 1925, when the insured was thirteen years old, and called for weekly premiums of twenty-five cents. It was a straight life policy, the amount payable at death varying according to the number of years that the policy would have been in good standing at the time of death, as shown by a schedule forming part of the policy. There was no provision in the original policy relating to death by accident. The insured died by accident in June, 1937, but the payment of premiums had ceased early in November, 1935, and this brought into operation the third paragraph of the "conditions" forming part of the policy, which reads as follows: "If any premium under this policy shall not be paid when due, the policy shall lapse, subject to the provision for Grace Period and to the Non-Forfeiture Privileges as herein contained * * *." The paragraph about "Grace Period" is in another part of the policy and provides, among other things, that "a grace of four weeks shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force. If death occur within the days of grace, the overdue premiums shall be deducted from the amount payable hereunder * * *." The "non-forfeiture privileges" are contained in a paragraph headed "Free Policy." This seems to be a provision for turning a defaulted policy into what for convenience may be called a paid-up policy, based on the period in years for which premiums have been paid. The default occurred, as has been said, in 1935, so that the policy had been in force for ten years. The amount of the policy as a paid-up policy is indicated by a table, from which it appears that if the policy was issued at age thirteen, and premiums had been paid for ten years and the policy had then lapsed, the amount payable in case of death at any time thereafter would be $245, and this in fact is what the Company paid on proof of

death. All this is clear enough, and the beneficiary would doubtless have been satisfied with that settlement but for the intervention of two things. The first was the Company's voluntary addition to the policy in 1928 of a rider headed "Industrial Policy Accidental Death Benefit." The death, as had been said, was by accident. The rider provides, in substance, that on proof that the insured came to his death by accident (the exact language is unimportant as there is no dispute on this score) "while this policy is in force, and while premiums are not in default beyond the grace period specified in this policy, the Company will pay ' * * * an accidental death benefit equal to the face amount of insurance then payable at death," with certain exceptions not here applicable.

The plaintiff's claim in the trial court was that this rider had the effect of adding unqualifiedly to the original policy an accidental death benefit equal to the ordinary death benefit, and this notwithstanding the facts that the payment of premiums had ceased some eighteen months or so before the death, that the grace period of four weeks had long since expired, that consequently the policy had lapsed under the condition already quoted, and that it had automatically turned into a "free policy" under the clause of the policy headed "Free Policy" and quoted above. The trial court, after reserving decision, sustained this claim of plaintiff, relying, as we read the decision, on the proposition that there was an ambiguity in the language of the policy and rider, which ambiguity, under the usual rule, should be resolved against the Company that issued the policy and the rider, and in favor of the beneficiaries thereunder. We think, however, that there is no such ambiguity as to call for the application of this rule. Clearly, if the premiums had continued to be paid up to the date of death, or within four weeks of that date, the accident rider would be applicable. But a careful examination of the language of the rider seems to us to indicate plainly that it is directed only to a situation where death ensues while the policy is in good standing in its original form. The rider creates a new benefit not alluded to nor

contemplated by the original policy, and creates it on two conditions; first, that the policy be in force; and, secondly, that premiums be not in default beyond the grace period specified. If the second condition were not present, it might plausibly be argued that the accidental death benefit would be applicable to a policy that had been turned into a paid-up policy. But the second condition seems specific as exclusive of that situation. The specification of premiums "not being in default beyond the grace period specified" is one that necessarily connotes the existence of a policy in its original form, and not a policy which, by its terms, has lapsed without any "obligation on the part of the Company to receive premiums which are in arrears over four weeks," which is the language of the grace period in the paragraph quoted above.

Our conclusion therefore is that by a proper construction of the two instruments together, the policy and the rider, the extra benefit for death by accident arose only where the original policy was in force and premiums were not in default over four weeks, and that the accident benefit was not applicable to the policy after it had automatically been metamorphosed into a paid-up policy.

We are not unmindful of one or more decisions in other jurisdictions which seem to indicate a contrary view, but they are not binding on us, and we are unable to concur in the reasoning or result.

The judgment will be reversed; and as the facts are settled, judgment for defendant-appellant may be entered in this court, with costs. *Legg* v. *Passaic County,* 122 *N. J. L.* 100, and cases cited.